# EXHIBIT C

DEPOSITION OF MICHAEL FALLON, 8/1/06

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF ALASKA
 3   _____
 4   TESORO ALASKA COMPANY,           )
                                      )
 5              Plaintiff,            )
                                      )
 6        v.                          )   No. 3:06-CV-00020-TMB
                                      )
 7   ST. PAUL FIRE AND MARINE         )
     INSURANCE COMPANY,               )
 8                                    )
                Defendant.            )
 9   _____
10
11           DEPOSITION UPON ORAL EXAMINATION
12                         OF
13                   MICHAEL FALLON
14   _____
15
16                 August 1st, 2006
17                     9:40 a.m.
18          601 Union Street, Suite 3100
19                 Seattle, Washington
20
21
22
23
24                AMINAH R. CHAMBERS
25         REGISTERED PROFESSIONAL REPORTER
```

DEPOSITION OF MICHAEL FALLON, 8/1/06

Page 22

1  Q  Have you seen it before?
2  A  Yes.
3  Q  Have you, as part of your responsibilities at
4     Wilder, had any part in the creation of those
5     documents?
6  A  Not in the creation. The author is Parker,
7     Smith & Feek.
8  Q  Any activity with respect to those documents in
9     your job for Wilder?
10 A  When one of these comes back as a review of
11    potential job we're looking to quote on, and
12    there are some -- I forget the hierarchy how we
13    grade these things. I think she calls them
14    critical issues. When we have one that's a
15    critical issue, I'll probably read that and maybe
16    have a dialogue with the broker on what the issue
17    is, also on the person soliciting that piece of
18    work to say, "We're going to have a problem with
19    this owner," but specifically to this one, the
20    answer would be no, I haven't -- what's the
21    word -- mentally digested this until after the
22    fact, until August of last year.
23 Q  August of 2005?
24 A  Correct.
25 Q  So let me just see if I can sort of walk through

Page 23

1     this. I handed you what was a letter dated
2     February 18, 2004, from Parker, Smith & Feek of
3     Wilder Construction in Anchorage, correct?
4  A  Correct.
5  Q  And attached to that is a fax cover sheet dated
6     February 16th, 2004, to Parker, Smith & Feek
7     from Wilder Construction, correct?
8  A  Correct.
9  Q  And that was a fax that came from -- Kathy
10    Urquhart, correct, or someone else?
11 A  Linda, it should be -- yeah, it is.
12 Q  Kathy Urquardt?
13 A  Yes.
14 Q  And it's addressed to Linda Lira of Parker,
15    Smith & Feek?
16 A  Correct.
17 Q  And attached to that is a February 9, 2004,
18    letter to Dave Dickhaus of Wilder in Anchorage
19    from Randy Christian of Tesoro?
20 A  Correct.
21 Q  Did you ever see this February 9, 2004, letter
22    from Mr. Christian to Mr. Dickhaus in or around
23    February 2004?
24 A  No.
25 Q  When's the first time you saw this letter?

Page 24

1  A  Sometime after August 1 of 2005.
2  Q  Is that typical that on occasion someone else
3     within Wilder would take it upon themselves to
4     communicate directly with Parker, Smith & Feek --
5  A  That's expected.
6  Q  -- about the acquisition of insurance?
7  A  You call it "the acquisition." I don't know I
8     would call it the acquisition. That's already a
9     feature of our policy, so we're not acquiring
10    anything additional.
11 Q  The effort to determine whether the insurance
12    that's required exists?
13 A  To determine, perhaps, whether it satisfied the
14    terms of the contractual obligation.
15 Q  Sounds good to me.
16    So the first time you saw any of these
17    documents was after August of 2005?
18 A  I'd say so.
19 Q  You did play a part with respect to the renewal
20    of Wilder's general liability insurance policy
21    for the 2003/2004 period, did you not?
22 A  Correct.
23 Q  And the 2004 to 2005 period?
24 A  Correct.
25 Q  And included in those policies were endorsements

Page 25

1     that provided additional insured coverage,
2     additional protected person status to entities
3     with whom Wilder might have contracts that
4     require such insurance coverage, correct?
5  A  In the future, that's correct.
6  Q  And at the time that Wilder obtained its
7     insurance coverage for the 2004/2005 -- let's go
8     2004 first -- did you know at the time whether or
9     not there were asphalt sales contracts between
10    Wilder and Tesoro that required insurance
11    acquisition?
12 A  I did not know.
13    MR. SUTHERLAND: Object to
14    the form.
15 Q  (By Mr. Clarkson) You didn't know?
16 A  I didn't know.
17 Q  And the same would be true for the 2004/2005
18    period?
19 A  Correct.
20 Q  Is it fair to say the first time you became aware
21    of that issue that the Tesoro asphalt sales
22    contracts required insurance of Wilder to protect
23    Tesoro was after August of 2005?
24 A  Correct.
25 Q  To your knowledge, is there anybody else at