Kevin G. Clarkson, Esq.
BRENA, BELL & CLARKSON, P.C.
310 K Street, Suite 601
Anchorage, AK 99501
Telephone: (907) 258-2000
Facsimile: (907) 258-2001
kclarkson@brenalaw.com

Attorneys for Tesoro Alaska Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TESORO ALASKA COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ST. PAUL FIRE AND MARINE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) Case No. 3:06-CV-00020-TMB |
| _____ | ) |

## TESORO ALASKA COMPANY'S
## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
### [Count 1 – Additional Insured Coverage]

## INTRODUCTION

This is an action for declaratory relief brought under 28 U.S.C. §§ 1332 and 2201. Tesoro

Alaska Company ("Tesoro Alaska") seeks a declaratory judgment from this Court (1) declaring

Tesoro Alaska's status as an additional insured under the Contractors Commercial General Liability

Protection Insurance Policy (hereafter "Policy") that St. Paul Fire & Marine Insurance Company

("St. Paul") issued to St. Paul's insured and Tesoro Alaska's customer, Wilder Construction

BRENA, BELL &
CLARKSON, P.C.
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 1 of 33

Company d/b/a Central Paving Products ("Wilder"); and (2) declaring St. Paul's obligation to provide coverage under the Policy, both defense and indemnity, to Tesoro Alaska with respect to the claims that have been asserted by Bonnie Rogers against Tesoro Alaska regarding the death of her husband, Larry Rogers ("Rogers").

This case finds its genesis in the buyer/seller relationship between Wilder and Tesoro Alaska. Wilder, as buyer, purchased asphalt from Tesoro Alaska, as seller, under the terms of an Asphalt Sales Contract ("the Contract"). In this buyer and seller context, the Contract required Wilder to do two significant things. First, the Contract required Wilder to indemnify and defend Tesoro Alaska, its affiliates and their respective employees from claims of any kind and character, including those for injury or death, that are in any way incident to or arising directly or indirectly out of, among other things, the receipt and transportation of the purchased asphalt. Second, the Contract required Wilder to obtain General Liability Insurance with minimum limits of $2,000,000 combined single limit per occurrence for bodily injury liability that would cover Tesoro Alaska as an additional insured. Consistent with its obligation under the Contract, Wilder obtained a Certificate of Insurance and an Additional Protected Persons Endorsement (hereafter "Endorsement") to the Policy that it had obtained from St. Paul. The Endorsement added Tesoro Alaska as an "Additional Protected Person" to the Policy.

The above referenced contractual provisions and insurance policy became significant on the morning of October 6, 2004. At that time Larry D. Rogers ("Rogers"), an employee of Doyle's Fuel Service, Inc. ("Doyle's"), the contractor that Wilder hired to receive and transport the asphalt it purchased from Tesoro Alaska, fell from the top of a Doyle's asphalt tanker while in the process of

BRENA, BELL &
CLARKSON, P.C.
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 2 of 33

loading asphalt at Tesoro Alaska's refinery.  Rogers died that same day from injuries sustained in his fall.

Bonnie Rogers filed a wrongful death action against Tesoro Alaska regarding the death of her husband.  Tesoro Alaska then tendered the Rogers claim to (1) Wilder pursuant to the indemnity provision of the Contract and (2) St. Paul pursuant to the Policy and Endorsement.  Wilder accepted Tesoro Alaska's tender with reservations, but St. Paul refused Tesoro Alaska's tender claiming that the Endorsement did not make Tesoro Alaska an additional insured under the Policy for purposes of the Rogers claim.  St. Paul took and continues to take the position that the Endorsement makes Tesoro Alaska an additional insured under Wilder's Policy only in nonexistent situations that bear no connection to the Contract and/or the actual buyer/seller relationship between Wilder and Tesoro Alaska.

There being no genuine issues of material fact as to Count 1 of Tesoro Alaska's Complaint, Tesoro Alaska is entitled to partial summary judgment against St. Paul declaring Tesoro Alaska's status as an additional insured under the Policy and Endorsement.  Interpretation of the Policy and Endorsement is a question of law.  Interpreting the Policy and Endorsement pursuant to their plain language and consistent with both the Contract and the reasonable expectations of Wilder and Tesoro Alaska, and construing any ambiguity in the Policy and Endorsement against St. Paul and in favor of coverage, Tesoro Alaska is an additional insured under the Policy.  Tesoro Alaska is entitled to coverage, defense and indemnity from St. Paul with respect to the Rogers claim.

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 3 of 33

## STATEMENT OF FACTS

**The Relationship Between Tesoro Alaska and Wilder/Insurance Acquisition.** Tesoro

Alaska owns and operates a refinery in Kenai, Alaska. [Hansen Aff.] As part of its refinery operation,

Tesoro Alaska makes asphalt that it sells to customers like Wilder. [Id.] Tesoro Alaska's customers,

like Wilder, receive the asphalt that they purchase from Tesoro Alaska at an asphalt loading rack that

is located and operated at Tesoro Alaska's Kenai refinery. [Id.]

Wilder has purchased asphalt from Tesoro Alaska for approximately the past 10-15 years.

[Exh. 8, Fallon Dep. p. 15][1] On July 7, 2004, Wilder executed Contract No. 40008078 with Tesoro

Alaska, by and through Tesoro Alaska's agent, Tesoro Refining and Marketing Company

("TRMC"), for the purchase of 4,000 tons (plus or minus) of PG 52-28 Asphalt (hereafter "the

Contract"). [Exh. 1, p. 1; Hansen Aff.] Pursuant to the Contract, that was for the stated contract term

of July 1, 2004 through December 31, 2004, Tesoro Alaska agreed to sell and Wilder agreed to buy

asphalt "F.O.B. Nikiski Refinery"; "FOB Nikiski rack." [Exh. 1, p. 1]   The Contract set forth

"CONDITIONS OF SALE" by incorporating the "general terms and conditions on the reverse" side

of the Contract. [Exh. 1, p. 1] The general terms and conditions were "incorporated in" and

"constitute a part" of the Contract, and "by execution of" the Contract Wilder "agrees to the general

terms and conditions." [Exh. 1, p. 1]

The general terms and conditions included three provisions that are pertinent to this motion.

First, paragraph 4(b) provided that when delivery of the asphalt occurred at Tesoro Alaska's facility,

i.e., at the asphalt rack at the refinery, "ownership, title and risk of loss" of the asphalt transferred

---

[1]     Michael Fallon is Wilder's Safety and Risk Manager. [Exh. 8, Fallon Dep. p. 9]

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 4 of 33

from Tesoro Alaska to Wilder at the point where Tesoro Alaska loaded the asphalt into Wilder's

truck or Wilder's representative's truck.  [Exh. 1, p. 2 ¶ 4(b)]. Thus, under the Contract the asphalt

(1) belonged to Tesoro Alaska at all times while it was inside the pipeline at the asphalt rack and

refinery; and (2) belonged to Wilder at the point at which it exited the mouth of the loading arm of

the asphalt rack and entered the tanker trailer belonging to Wilder or Wilder's representative. [Id.]

And, under the Contract it was Tesoro Alaska's obligation to load the asphalt into the tankers

arriving at the asphalt rack.  The paragraph states in full as follows:

> 4.    <u>DELIVERIES, TITLE AND RISK OF LOSS</u>
> . . . .
> b.    For sales made at Seller's facility and not delivered to Buyer by Seller,
> ownership, title and risk of loss shall pass from Seller to Buyer at the point and time
> that Seller loads the Product into Buyer's truck or Buyer's representative's truck or
> into railroad tank cars owned, leased or controlled by Buyer.  For sales made on a
> delivered basis to Buyer's plant or destination, ownership, title and risk of loss shall
> pass from Seller to Buyer at the point of discharge at Buyer's plant or destination.
> Loading of Product under this agreement shall take place at Seller's or Seller's
> representative's facility located as set forth in the Agreement.  Any usage of terms
> such as FCA, FOB, C&F, CPT, CIF, and ex dock in connection with specific orders
> are used solely to denote price and service provisions.

[Exh. 1, p. 2 ¶ 4(b)]. The asphalt sales relevant to this action, and that Rogers was working with

respect to when he fell and was injured, were made at Tesoro Alaska's asphalt rack facility. [Hansen

Aff.]

Second, paragraph 9(c) of the Contract required Wilder to indemnify and defend Tesoro

Alaska with respect to any damages and claims that might arise out of the receipt and transportation

of the asphalt.  The paragraph provided as follows:

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
<u>Tesoro v. St. Paul Fire and Marine Insurance Company</u>, 3:06-CV-00020-TMB
Page 5 of 33

9.    <u>LIABILITY AND INDEMNITY</u>

. . . .

c.    Buyer shall indemnify, defend and hold harmless Seller, its parent and affiliates and their shareholders, officers, directors, employees, representatives and agents and all of them, from and against any and all damages, costs, losses, claims, fines, charges, penalties, judgments, liens, expenses (including attorneys' fees and other defense costs), demands, liabilities and causes of action of every kind and character, including without limitation, those for . . . injury to or death of any person (including Buyer's or Seller's employees), in any way incident to, in connection with, or arising directly or indirectly out of Buyer's or its employee's, contractor's, or agent's actions or omissions in or during the operation or conduct of Buyer's business, the receipt, storage, transportation and use of the Product . . . without regard to the cause or causes thereof or the negligence of any party or parties, except to the extent caused by the sole negligence or willful misconduct of Seller.

[Exh. 1, p. 2 ¶ 9(c)].

Third, paragraph 9(f) of the Contract required Wilder to obtain Commercial General Liability

insurance with limits of $2,000,000 and with Tesoro Alaska named as an additional insured to the

policy.  The paragraph provided in relevant part as follows:

(f)    Buyer or Buyer's representative shall carry the following insurance as a condition to entry onto Seller's premises: . . . (2) Commercial General Liability Insurance  with minimum limits of $2,000,000 combined single limit per occurrence for bodily injury . . . liability. . . . Such insurance shall be primary coverage, shall include a waiver of subrogation against Seller [Tesoro] and shall name Seller [Tesoro] as an additional insured.

[Exh. 1, p. 2 ¶¶ 9(c), (f)].  The asphalt sales contracts between Wilder and Tesoro Alaska have

apparently always been in the exact same form and contained the same terms. [Exh. 8, Fallon Dep.

p. 17 and Fallon Dep. Exh. 2[2]]

---

[2]    Citations to "Name Dep. Exh. ___" are to exhibits to the deposition of the named witness.  The exhibits have been included as part of the Exhibit that corresponds with the named witness's deposition transcript.  Thus, in this instance, Fallon Dep. Exh. 2 is found as part of Exh. 8 to this motion.  Fallon Dep. Exh. 2 is an Asphalt Sales Contract for an earlier period of August 8, 2002 through December 31, 2002. [Exh. 8, Fallon Dep. p. 17 and Fallon Dep. Exh. 2].

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
<u>Tesoro v. St. Paul Fire and Marine Insurance Company</u>, 3:06-CV-00020-TMB
Page 6 of 33

On February 9, 2004, Randy Christian, Manager, Commercial Marketing, Asphalt, for TRMC, wrote to Wilder and requested the Certificate of Liability Insurance required by paragraph 9(f) of the then-existing Asphalt Sales Contract between Wilder and Tesoro Alaska. [Exh. 9, Cardiel Dep. p. 17-19 and Cardiel Dep. Exh. 2] In response, on February 16, 2004, Wilder forwarded the letter to Parker, Smith & Feek ("PS&F"), an insurance broker, and requested that the necessary Certificate of Insurance be issued and sent to Tesoro Alaska. [Cardiel Dep. pp. 17-21 and Cardiel Dep. Exh. 2] PS&F reviewed Wilder's then-existing insurance policies and identified the ADDITIONAL PROTECTED PERSONS ENDORSEMENT – CONTRACTORS GENERAL LIABILITY (Endorsement No. GO3222) (hereafter "Endorsement") that was then in existence as part of Wilder's insurance coverages from St. Paul. [Exh. 9, Cardiel Dep. pp. 21-34] Concluding that the Endorsement provided additional insured status to Tesoro Alaska, PS&F issued the necessary Certificate for Tesoro Alaska [Exh. 9, Cardiel Dep. pp. 21-34 and Cardiel Dep. Exh. 3]. The Certificate that PS&F issued specifically referenced the Tesoro Asphalt Sales Contract, and that Tesoro Alaska had been "included as an Additional Insured" with coverage that was "primary and non-contributory per Form GO322." [Exh. 9, Cardiel Dep. Exh. 3] PS&F forwarded the Certificate and Endorsement to Wilder on February 18, 2006. [Exh. 9, Cardiel Dep. pp. 23-25, 39 and Cardiel Dep. Exh. 3]. Wilder forwarded the Certificate and Endorsement to Tesoro Alaska. [Exh. 9, Cardiel Dep. p. 39-40; Hammock Aff.]

When Wilder renewed its insurance coverages in April, 2004, as it always did annually, PS&F once again issued a Certificate of Insurance for the benefit of Tesoro Alaska specifically referencing the Tesoro Asphalt Sales Contract. [Exh. 9, Cardiel Dep. pp. 35-40 and Cardiel Dep.

BRENA, BELL &
CLARKSON, P.C.
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 7 of 33

Exh. 4]. On or about April 1, 2004, PS&F forwarded the Certificate together with a copy of the Endorsement (Form GO322) to Tesoro Alaska. [Exh. 9, Cardiel Dep. p. 39 and Cardiel Dep. Exh. 4; Hammock Aff.]

When it issued the Certificate in April, 2004, PS&F in its capacity as an agent for St. Paul marked with an "X" the box on the Certificate indicating that Wilder had obtained "Additional Insured" coverage. [Exh. 7] Then, in the box on the Certificate entitled "Description of Operations/Locations/Vehicles/Exclusions Added by Endorsement/Special Provisions" PS&F for St. Paul specifically referenced the "Tesoro Asphalt Sales Contract" confirming the understanding that the additional insured coverage was being obtained to fulfill Wilder's contractual obligation to Tesoro Alaska under the Contract. [Exh. 7; Exh. 9, Cardiel Dep. pp. 17-40] St. Paul further indicated that the coverage provided with respect to the Tesoro Asphalt Sales Contract" was "primary and non-contributory" (specific requirements and language that were taken from the asphalt sales Contract between Wilder and Tesoro Alaska as quoted in Mr. Christian's February 9, 2004 letter [Exh. 9, Cardiel Dep. pp. 17-40 and Cardiel Dep. Exh. 2]) "per Form GO322, Edition 12/97, as respects to General Liability." [Exh. 7]

The form of the Endorsement (GO322, Rev. 12-97) that PS&F chose to utilize to fulfill Wilder's contractual obligation to add Tesoro Alaska as an additional insured to Wilder's Commercial General Liability Policy was not the best form designed to accomplish Wilder's contractual obligation. [Exh. 9, Cardiel Dep. pp. 45-52, 80-86 and Cardiel Dep. Exhs. 13, 15] The printed main text of the Endorsement (Endorsement GO322) provided in pertinent part:

> This endorsement changes your Contractors Commercial General Liability Protection. . . .

BRENA, BELL &
CLARKSON, P.C.
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 8 of 33

How Coverage is Changed.  There are two changes which are described below.

1.  The following is added to the Who is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

**Additional protected person.**  The person or organization named below is an additional protected person as required by a contract or agreement entered into by you.  But only for covered injury or damage arising out of:

- your work for that person or organization;

- your completed work for that person or organization if your contract or agreement requires such coverage;

- premises you own, rent, or lease from that person or organization; or

- your maintenance, operation, or use of equipment leased from that person or organization. . . .

2.  The following is added to the Other primary insurance section.  This change broadens coverage.

We'll consider this insurance to be primary to and non-contributory with insurance issued directly to additional protected persons listed below if:

- your contract specifically requires that we consider this insurance to be primary or primary and non-contributory.

- you request before a loss that we consider this insurance to be primary or primary and non-contributory insurance.

[Exh. 2]

The printed main text of Endorsement GO322, (1) would have limited Tesoro Alaska's additional insured status mostly to nonexistent situations having no connection to the reality of Tesoro Alaska's and Wilder's Asphalt Sales Contract and buyer/seller relationship; and (2) would have had the effect of **not** adding Tesoro Alaska as an additional insured to Wilder's Commercial General Liability Policy for most real situations arising out of Tesoro Alaska's and Wilder's Asphalt

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 9 of 33

Sales Contract and buyer/seller relationship.  As quoted above, the main text of the Endorsement

contained limitation language that would ordinarily have had the effect of adding the additional

protected person to Wilder's insurance coverage in only five situations:

- situations in which Wilder is working for the additional protected person;

- situations in which Wilder had completed work for the additional protected person;

- situations in which Wilder owns premises on which the additional protected person incurs liability;

- situations in which Wilder rents or leases premises from the additional protected person; and

- situations in which Wilder maintains, operates, or uses equipment leased from the additional protected person.

These situations potentially had no connection or application to Wilder's commercial

buyer/seller relationship with Tesoro Alaska.  Wilder did not contract to work for Tesoro Alaska,

did not own premises on which Tesoro Alaska could incur liability, did not rent or lease premises

from Tesoro Alaska, and did not lease equipment from Tesoro Alaska [Hansen Aff].  Instead, Wilder

was Tesoro Alaska's customer, a buyer of asphalt, to whom Tesoro Alaska, as seller, sold asphalt.

[Hansen Aff.]  Thus, if Endorsement GO322 had been used without modification in circumstances

where Tesoro Alaska as Seller loaded the asphalt that it sold to Wilder into the tanker trailers

operated by Wilder's representative, Doyle's, the Endorsement would not have accomplished

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 10 of 33

fulfilling Wilder's contractual obligation to provide Tesoro Alaska additional insured protection. [Compare Exhs. 1 and 2].[3]

However, two significant things happened that actually made the Endorsement fit Wilder's contractual relationship with Tesoro Alaska. First, in 2003 Tesoro Alaska arranged to have Wilder's representative, Doyle's, conduct Tesoro Alaska's work of loading the asphalt into the tanker trailers. [Exh. 10, Brown Dep. pp. 35-37; Hansen Aff.] Thus, under the combined terms of the Endorsement and Policy, Doyle's as Wilder's representative worked for Tesoro Alaska by performing Tesoro Alaska's contractual obligation to Wilder to load the asphalt into the tankers. [Exh. 1, p. 2 ¶ 4(b)]. The Endorsement provides that:

> We explain what we mean by your work and your completed work in the Products and completed work total limit section.

[Exh. 2] The "Products and completed work total limit section" of the Policy defines the term "Your Work" to include work or "service" that "others," such as Doyle's, are performing or providing for Wilder. [Exh. 9, Cardiel Dep. pp. 149-150 and Cardiel Dep. Exh. 5, Form 47175, Ed. 7-01, p. 12]

Second, St. Paul did not issue the Endorsement to Wilder in its ordinary printed form. The modification appears to fit Wilder's specific buyer/seller relationship with Tesoro Alaska and to accomplish adding Tesoro Alaska to Wilder's Policy consistent with the Contract. Endorsement Form GO322 was "the blanket form intended for everybody" [Exh. 9, Cardiel Dep. p. 141] and St. Paul had no endorsement form that was "geared toward a buyer/seller/vendor/vendee relationship

---

[3]       Wilder had apparently obtained the same Endorsement GO322 from St. Paul, in more or less the same form, for a period of years prior dating back to at least 1998. [Exh. 9, Cardiel Dep. pp. 109-114 and Cardiel Dep. Exhs. 20, 21, 22, 23]

**BRENA, BELL & CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

that would be potentially applicable in a sales setting." [Exh. 9, Cardiel Dep. p. 141]. St. Paul

modified the Endorsement by adding a paragraph at the bottom of the Form by way of typed-in text.

[Exh. 2] This typed-in text, (1) identified the "Person Or Organization" who was an "ADDITIONAL

PROTECTED PERSON"; and then (2) replaced the limitations printed in the main text of the

Endorsement with one, and only one, different limitation. The typed-in text stated as follows:

> **Person Or Organization**: Any person or organization that you agree in a written
> contract or agreement to add as an additional protected person. But we won't apply
> this endorsement to your maintenance, operation, or use of equipment leased from
> that person or organization. Instead, we'll apply the Equipment Lessor's section to
> them.

[Exh. 2] If the Endorsement is read with the typed-in text controlling, then (1) St. Paul did add

Tesoro Alaska as an additional insured to Wilder's Policy in real situations actually connected to

Wilder's Asphalt Sales Contract and commercial buyer/seller relationship with Tesoro Alaska; and

(2) Wilder did in fact fulfill its obligation under the Contract to add Tesoro Alaska as an additional

insured to Wilder's Policy. When read reasonably and so as to have meaning and effect within the

specific Asphalt Sales Contract and buyer/seller context in which Wilder and Tesoro Alaska actually

interact, the typed-in text of the Endorsement adds Tesoro Alaska as an additional insured to

Wilder's Policy except with respect to Wilder's "maintenance, operation, or use of equipment leased

from that person or organization [Tesoro]." [Exh. 2]

The typed-in language on the bottom of the Endorsement modifies the main text of the

Endorsement to make it fit the context of Wilder's commercial relationship with Tesoro Alaska. Id.

Whereas the main text of the endorsement would have provided coverage ("But only for") solely in

the situations listed above, the typed-in language has the effect of broadly extending coverage and

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 12 of 33

then eliminating coverage ("But we won't") in the sole context in which Wilder maintains, operates, or uses equipment leased from the additional protected person. Id. The typed-in limitation language does not repeat the scope of coverage limitations that are printed in the main text. Id. Rather, the typed-in language states one, and only one, different coverage limitation. Id. In other words, the typed-in language has the effect of deleting the limitations printed in the main text of the Endorsement regarding the coverage that is provided for the additional protected person and then replacing them with one, and only one, different limitation. The typed-in language thus has the effect of making the Endorsement fit Tesoro Alaska's Asphalt Sales Contract and commercial buyer/seller relationship with Wilder. Id.

If the purpose of the typed-in language was simply to identify the person or organization "added" to coverage, and not to delete and replace the "limitations" on coverage, then there would have been no reason for St. Paul to discuss limitations on coverage in the typed-in language. Id. If the purpose of the typed-in language was simply to identify Tesoro Alaska as the person or organization that was being "added" to coverage, with the coverage being subject to the limitations printed in the main text of the Endorsement, then the typed-in language should have done nothing more than state "Tesoro Alaska Company."

The typed-in language of the Endorsement does, however, address limitations on coverage. The typed-in language deletes the coverage limitations printed in the main text, and then states one, and only one, different limitation which is the exact reverse of one of the main text limitations. The deleted limitations, those that are not repeated in the typed-in language, (1) are not generally reflective of the actual Asphalt Sales Contract and commercial buyer/seller context in which Wilder

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 13 of 33

interacts with Tesoro Alaska; and (2) if applied, would have potentially had the effect of negating the Endorsement and making it a meaningless document that provided Tesoro Alaska no insurance coverage whatsoever in the actual context of Wilder's buyer/seller relationship with Tesoro Alaska. Id.  It has apparently been common for St. Paul to use the typed-in language on Form GO322 to modify or change printed terms in the main text of the Endorsement. [Exh. 9, Cardiel Dep. pp. 156-159 and Cardiel Dep. Exhs. 20, 21, 22, 23].

**The October 6, 2004 Incident.**  As relevant to this motion, the facts regarding the incident on October 6, 2004, are few, straightforward, and uncontested.  Larry D. Rogers ("Rogers") was a truck driver employed by Doyle's Fuel Service, Inc. ("Doyle's"). [Exh. 3, Complaint ¶ IV] On the morning of October 6, 2004, Rogers arrived at Tesoro Alaska's asphalt loading rack and began loading two connected tanker trailers that were owned by Weaver Bros., Inc. [Exh. 3; Complaint ¶ VI; Exh. 4;[4]] Wilder had contracted with Doyle's to pick up and transport the asphalt that it had purchased from Tesoro Alaska. [Hansen Aff.]  On the morning of October 6, 2004, Rogers was loading asphalt into his tanker that Wilder had purchased from Tesoro Alaska. [Exh. 5, Truck Manifest; Exh. 6, Bill of Lading]

Subsequently that morning, Rogers was found lying on the grating of the upper level of the asphalt loading rack near the Driver's Room door, bleeding from a wound on his head. [Hansen Aff.; Exh. 4, p. 2]  No one witnessed Rogers being injured, but it is assumed that Rogers somehow and for some reason fell from the catwalk on the tanker trailer, onto the ground, and then walked around

---

[4]       "The tractor and trailers are owned by Weavers (sic) Brothers, Inc. and leased to Doyle's Fuel Service, Inc." [Exh. 4, p. 4]

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 14 of 33

his truck and up the stairs of the asphalt rack to the upper level grating where he laid down. [Hansen Aff. ¶ 3; Exh. 4, p. 2[5]]  Rogers died later that day. [Exh. 3, Complaint ¶ VIII]

**Rogers' Claims Against Tesoro Alaska**.  Bonnie Rogers filed a wrongful death action against Tesoro Alaska. [Exh. 3] Bonnie Rogers claimed that Tesoro Alaska owed a duty of care to her husband to (1) provide a workplace free of unreasonable hazards [Exh. 3, Complaint ¶ VII(1)]; (2) provide an adequate fall protection system at the Tesoro Alaska hot asphalt loading rack [Exh. 3, Complaint ¶ VII(2)]; (3) establish, follow and enforce work place safety procedures, apparently related to Tesoro Alaska's asphalt loading rack [Exh. 3, Complaint ¶ VII(3)]; and (4) provide proper supervision, support, direction and oversight of asphalt loading operations [Exh. 3, Complaint ¶ VII(4)].

Bonnie Rogers alleges that, "[p]rior to the date of the accident, Tesoro had changed its practice and was not providing Tesoro support personnel to assist in the [asphalt] loading operation." [Exh. 3, Complaint ¶ VI] She alleges that the asphalt loading operation at Tesoro Alaska's rack required Rogers to access the top of the tanker trailer in order to open the tanker covers and place a mechanical arm for the delivery of the hot asphalt product. [Exh. 3, Complaint ¶ VI] She alleges that the distance from the tanker catwalk to the ground was approximately 11 feet. [Exh. 3, Complaint ¶ VI]  Finally, she alleges that Tesoro Alaska failed to comply with an Occupational Safety and Health Administration ("OSHA") regulation that is claimed to obligate Tesoro Alaska

---

[5]        "From the above facts the likely scenario is that Mr. Rogers fell from the tanker's cat walk, brushed the tanker's side during his fall, landed on the pavement below the tankers hatch (north side) proceeded to the stairs climbed the stairs and fell just as he reached the door of the dog house.  This is where Mr. Van Meter found him." [Exh. 4, p. 2]

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

to provide a "fall protection system or personal fall protection equipment at the asphalt loading rack." [Exh. 3, Complaint ¶¶ VI, X]

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Civil Rule 56(c), summary judgment should be entered in favor of a moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact affecting the outcome of the litigation requires a trial to resolve the parties' differing versions of the truth. Courts will construe all evidence and draw all inferences in favor of the non-moving party. See Braxton-Secret v. A.H. Robbins Co., 769 F.2d 528, 530 (9th Cir. 1985); United States v. First Nat'l Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981); Derendinger v. Kiewet Construction Co., 272 F. Supp. 2d 850, 853 (D. Alaska 2003).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986). A dispute over a material fact exists only if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510-11 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. (Emphasis in original.) The non-moving party can defeat a motion for summary judgment only by producing

**BRENA, BELL & CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 16 of 33

sufficient specific facts to establish that there is a genuine issue regarding a material fact.  Celotex, 477 U.S. at 322, 106 S.Ct. at 2553.  Mere allegations of factual dispute, without more, will not defeat an otherwise proper motion.  See Provenz v. Miller, 102 F.3d 1478, 1489-90 (9th Cir. 1996); Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.")

Whether a factual issue is material is determined by the substantive law governing the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.  A factual issue is genuine if the evidence presented is such that a reasonable jury could return a verdict for the non-moving party."  Liberty Lobby, 477 U.S. 242, 106 S.Ct. at 2510.

The coverage issue in this case is highly appropriate for summary judgment adjudication. Insurance policies are treated as contracts of adhesion under Alaska law.  C.P. v. Allstate Insurance Company, 996 P.2d 1216, 1222 (Alaska 2000); Jones v. Horace Mann Ins. Co., 937 P.2d 1360, 1362 n. 3 (Alaska 1997); Bering Strait Sch. Dist. v. RLI Ins. Co., 873 P.2d 1292, 1294-95 (Alaska 1994). Because an insurance policy is a contract, the interpretation of policy language is a question of law for the court.  See Dugan v. Atlanta Cas. Cos., 113 P.3d 652, 654 (Alaska 2005); accord Great Divide Ins. Co. v. Carpenter, 79 P.3d 599, 606 (Alaska 2003); Kay v. Danbar, Inc., 132 P.3d 262, 269 (Alaska 2006); Alaska Construction & Engineering, Inc. v. Balzer Pacific Equipment Co., 130 P.3d 932, 935 (Alaska 2006).

**BRENA, BELL & CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 17 of 33

## II. TESORO ALASKA IS AN ADDITIONAL INSURED UNDER THE WILDER GENERAL LIABILITY INSURANCE POLICY AND IS ENTITLED TO DIRECT COVERAGE FROM ST. PAUL REGARDING THE ROGERS CLAIM

### A. Alaska Law Construes Insurance Policies Broadly in Favor of Coverage and in Favor of the Reasonable Expectations of the Insured

"The liability of an insurer is generally determined by the terms of the policy it has issued."

Allstate, 996 P.2d at 1222 (citing Jones, 937 P.2d at 1362 n. 3). In construing insurance policies,

Alaska law does not adhere to traditional principles of contract interpretation. Farquhar v. Alaska

Nat'l Ins. Co., 20 P.3d 577, 579 (Alaska 2001). "[B]ecause an insurance policy is a contract of

adhesion, we construe it to give effect to the insured's reasonable expectations." Id. (citing Jones,

937 P.2d at 1362 n. 3; Bering Strait, 873 P.2d at 1295).[6] "The objectively reasonable expectations

of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored

even though painstaking study of the policy provisions would have negated those expectations." Id.

(quoting Bering Strait, 873 P.2d at 1295 quoting Robert Keeton, Basic Text on Insurance Law

§ 6.3(a), at 351 (1971)); accord Teel, 100 P.3d at 4 (citing Allstate, 996 P.2d at 1222); accord State

Farm Mutual Automobile Ins. Co. v. Lawrence, 26 P.3d 1074, 1078 (Alaska 2001). Alaska law "will

not ignore or rewrite provisions in an insurance contract" but "even unambiguous language in an

insurance contract will be interpreted to comport with the reasonable expectations of a layperson."

Teel, 100 P.3d at 4 (citing Farquhar, 20 P.3d at 579); accord Great Divide, 79 P.3d at 606. Alaska

---

   [6]     Accord Allstate Ins. Co. v. Teel, 100 P.3d 2, 4 (Alaska 2004). "[W]e treat insurance contracts as contracts of adhesion and construe them to provide coverage that a layperson would reasonably have expected, given a lay interpretation of the policy language." Makarka v. Great American Ins. Co., 14 P.3d 964, 966 (Alaska 2000) (citing Fejes v. Alaska Ins. Co., 984 P.2d 519, 522 (Alaska 1999) and INA Life Ins. Co. v. Brundin, 533 P.2d 236, 241 (Alaska 1975)).

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 18 of 33

law follows the flexible approach of insurance contract interpretation favoring lay expectations even when the relevant policy language is not ambiguous. <u>Farquhar</u>, 20 P.3d at 579. "Laypersons are not expected to interpret a contract as a lawyer might. . . ." <u>Teel</u>, 100 P.3d at 4 (quoting <u>Safety Nat'l Cas. Corp. v. Pacific Employers Ins. Co.</u>, 927 P.2d 748, 750 (Alaska 1996) quoting Keeton, <u>Basic Text on Insurance Law</u> § 6.3(a), at 351 (1971)).

Where a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, Alaska law recognizes the interpretation that most favors the insured. <u>Great Divide</u>, 79 P.3d at 606 ("we therefore resolve ambiguities in the meaning of insurance contracts against the insurer"); <u>West v. Umialik Ins. Co.</u>, 8 P.3d 1135, 1138 (Alaska 2000); <u>Allstate</u>, 996 P.2d at 1222 and n. 38; <u>Fejes</u>, 984 P.2d at 522; <u>Starry v. Horace Mann Ins. Co.</u>, 649 P.2d 937, 939 (Alaska 1982).[7] "An ambiguity does not exist, however, merely because the parties disagree as to the interpretation of a term. An ambiguity exists only where the contract as a whole and all the extrinsic evidence support two different interpretations, both of which are reasonable." <u>Allstate</u>, 996 P.2d at 1222 n. 38 (citing <u>Modern Constr., Inc. v. Barce, Inc.</u>, 556 P.2d 528, 529 (Alaska 1976)).

In order to determine the reasonable expectations of the parties, Alaska law looks "to the language of the disputed policy provisions, the language of other provisions of the insurance policy, relevant extrinsic evidence, and case law interpreting similar provisions." <u>Allstate</u>, 996 P.2d at 1223

---

[7]    "'We therefore resolve ambiguities in the meaning of insurance contracts against the insurer.'" <u>Makarka</u>, 14 P.3d at 966 (quoting <u>Fejes</u>, 984 P.2d at 522 and citing <u>INA</u>, 533 P.2d at 241).

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
<u>Tesoro v. St. Paul Fire and Marine Insurance Company</u>, 3:06-CV-00020-TMB
Page 19 of 33

(citing <u>Stordahl v. Government Employees Ins. Co.</u>, 564 P.2d 63, 66 (Alaska 1977)).[8]  Alaska law

"construe[s] grants of coverage broadly and interpret[s] exclusions narrowly." <u>Teel</u>, 100 P.3d at 4;

<u>Allstate</u>, 996 P.2d at 1223 (citing <u>Hahn v. Alaska Title Guar. Co.</u>, 557 P.2d 143, 145 (Alaska 1976);

<u>Starry</u>, 649 P.2d at 939).

> **B.     The Endorsement Adds Tesoro Alaska as an Additional Insured to Wilder's General Liability Policy and St Paul, Therefore, Owes Tesoro Alaska Coverage, Both Defense and Indemnity, Regarding the Rogers Claim**
>
> > **1.     When Read Reasonably the Plain Language of the Endorsement Adds Tesoro Alaska as an Additional Insured to Wilder's General Liability Policy**
> >
> > > **a.     If the Limitations of the Printed Text Control, Then the Rogers Claim Arises out of Wilder's Work for Tesoro Alaska**

A simple reading of the Endorsement in conjunction with the controlling definitions

contained within the Policy confirms that if Larry Rogers' injury arises out of Wilder's work for

Tesoro, then Tesoro Alaska is insured by St. Paul as an additional protected person on the Wilder

Policy with respect to the Rogers claim.  The Endorsement changes the coverage provided under the

Policy. [Exh. 2] The Endorsement changes the Policy by adding "Any person or organization that

you [Wilder] agree in a written contract or agreement to add as an additional protected person" to

the "Who is Protected Under This Agreement" section of the Policy. [<u>Id.</u>] Tesoro Alaska is an

---

     [8]     When interpreting an insurance contract, Alaska law "pay[s] special attention to four factors: (1) the language of the disputed policy provision; (2) the language of related provisions in the policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions." <u>Makarka</u>, 14 P.3d at 966 (citing <u>Cox v. Progressive Cas. Ins. Co.</u>, 869 P.2d 467, 468 n. 1 (Alaska 1994)).  <u>Accord</u> <u>Teel</u>, 100 P.3d at 4; <u>Bering Strait</u>, 873 P.2d at 1295.

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
<u>Tesoro v. St. Paul Fire and Marine Insurance Company</u>, 3:06-CV-00020-TMB
Page 20 of 33

organization that Wilder agreed in a written contract to add as an additional protected person. [Exh. 1, p. 2 ¶ 9(f)].

As an additional protected person, Tesoro Alaska is covered for "injury or damage arising out of: your [Wilder's] work for that person or organization." [Exh. 2] The Endorsement states that the definition of "Your Work" that is found in the "Products and completed work total limit section" of the Policy controls. [Id.] The Policy defines the term "Your Work" to include any "work that you're [Wilder's] performing or others are performing for you [Wilder]; or service that you're [Wilder's] providing or others are providing for you [Wilder]." [Exh. 9, Cardiel Dep. Exh. 5, Form 47175, Rev. 7-01, p. 12]. Thus, if an injury or damage claim against Tesoro Alaska arises out of work for Tesoro Alaska that is performed by Wilder or some "other" for Wilder, then it is a claim for which Tesoro Alaska is covered by St. Paul under the Endorsement and Policy.

Here, Larry Rogers was an employee of Doyle's, the contractor that was hired by Wilder to receive and transport the asphalt that Wilder purchased from Tesoro Alaska. [Hansen Aff.] The Contract between Wilder and Tesoro Alaska establishes that the asphalt is the property of Tesoro Alaska while it is contained within the pipeline at the asphalt rack and becomes the property of Wilder only after it exits the mouth of the loading arm of the rack and enters Wilder's or Wilder's representative's tanker (here Doyle's tanker). [Exh. 1, p. 2 ¶ 4(b)]. The Contract between Wilder and Tesoro Alaska places the responsibility of loading the asphalt into the Wilder/Doyle's tanker on Tesoro Alaska. [Id.] It is Tesoro Alaska's equipment (the asphalt rack) that pumps the asphalt from the pipeline into the tanker. [Hansen Aff.] Tesoro Alaska arranged with Doyle's, Wilder's contracted representative, for Doyle's to operate the controls of the asphalt rack (Tesoro Alaska's equipment),

BRENA, BELL &
CLARKSON, P.C.
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 21 of 33

insert the loading arm into the hatches of the tanker trailers, and load the asphalt that Wilder purchased from Tesoro Alaska into the tanker trailers. [Hansen Aff.; Exh. 10, Brown Dep. 35-37]

Tesoro Alaska is covered as an additional protected person under the Wilder Policy and Endorsement regarding the Rogers claim because Doyle's as Wilder's representative was performing work for Tesoro Alaska at the time that Larry Rogers was injured. Larry Rogers fell from the top of the tanker trailer while working for his employer, Doyle's. At the time that Larry Rogers fell, Doyle's was Wilder's contracted representative for purposes of receiving and transporting asphalt purchased from Tesoro Alaska. And, at that time Doyle's was working for Tesoro Alaska by fulfilling one of Tesoro Alaska's contractual obligations under the Contract with Wilder (i.e., pumping asphalt from the pipeline into the tanker). The equipment that was being operated to pump the asphalt was Tesoro Alaska's equipment and the asphalt that was being pumped was Tesoro Alaska's property at all times until it exited the mouth of the loading arm and entered the Doyle's tanker trailer. [Exh. 1, p. 2, ¶ 4(b)].

> **b.    In the Alternative, if the Typed-In Language of the Endorsement Changes the Printed Text of the Endorsement, Then the Rogers Claim is Covered**

The typed-in language of the Endorsement adds Tesoro Alaska as an additional insured to Wilder's Policy with respect to the Rogers claim. The specific typed-in limitation language at the bottom of the Endorsement, the language that is directly connected to the specific language that adds Tesoro Alaska as an additional protected person under the Policy, states one, and only one, different limitation that is the exact reverse of one of the four limitations that are printed in the main text of the Endorsement. In other words, the typed-in language on the bottom of the Endorsement modifies

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 22 of 33

the main text of the Endorsement to make it fit the actual context of Wilder's Asphalt Sales Contract and commercial buyer/seller relationship with Tesoro Alaska and then repeats and reverses only the last limitation from the main text. Whereas the main text of the endorsement would have extended coverage ("But only for") solely in the situations listed in the main text above, the typed-in language has the effect of broadly extending coverage and then eliminating coverage ("But we won't") in the sole context in which Wilder maintains, operates, or uses equipment leased from the additional protected person. [Exh. 2]

Because the typed-in limitation language states one, and only one, different limitation and then does not repeat the scope of coverage limitations that are printed in the main text, the typed-in language is reasonably read to have the purpose and effect of changing the coverage limitations that apply to the additional protected person. If the purpose of the typed-in language was simply to identify the person or organization "added" to coverage, and if the purpose was not to modify the "limitations" on coverage, then there would have been no reason for the typed-in language to even address or discuss, let alone to revise, the limitations on coverage. See, e.g., Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co., 113 S.W.2d 37, 41-42 (Tex. App. 2003). Because the typed-in language addresses limitations on coverage for the additional protected person (Tesoro Alaska), that typed-in language controls. See, e.g., 2 Couch on Insurance, §§ 22:3, 22:4 (3d ed.). As Couch explains:

> For purpose of construction of the contract, the writing in the blanks of a policy which otherwise is in print is to be regarded as the immediate and chosen language of the parties to the contract. . . . If the printed and written clauses are repugnant to each other and cannot be reconciled, the written part, having been especially chosen for the occasion to express the agreement of the parties, will be given effect over the

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 23 of 33

more general printed ones.  This rule is particularly applicable where the conflicting printed clauses should have been stricken out, but were left in. . . .

2 Couch on Insurance § 22:3.  The rules regarding written words on an insurance policy apply equally to "typewritten or stamped clauses."  2 Couch on Insurance § 22:4.  In fact, as Couch explains, these rules take on special emphasis in the case of a rider or an endorsement: "The rule that the typewritten portion of a policy controls the printed form is especially applicable where the typewritten provision is contained in a rider."  2 Couch on Insurance § 22:4; accord Copper State Leasing Co. v. Blacker Appliance & Furn. Co., 770 P.2d 88, 90 (Utah 1988) ("If a printed form is modified by inserted words in writing or otherwise, the inserted words 'take precedence over the printed matter'") (quoting Bank of Ephraim v. Davis, 559 P.2d 538, 540 (Utah 1977); accord 11 Williston on Contracts § 32:13 (4th ed.);[9] Restatement of Contracts § 236(e).

Case law from other jurisdictions reflects that when St. Paul intends to use Endorsement GO322 to simply identify the person or organization "added" to coverage, St. Paul simply identifies that person or organization in the typed-in language without referencing "limitations" on coverage.  For example, in Phillips, H. B. Zachry Co. ("Zachry") contracted with Phillips Petroleum to perform maintenance and construction work. 113 S.W.2d at 38.   The contract between Phillips Petroleum and Zachry, just like the contract between Tesoro Alaska and Wilder in this case, required Zachry

---

[9]     As Williston explains: "Even though the parties will often begin with a preprinted or standard form contract, they will sometimes make additions to or changes in their printed contract, adopting it to their particular transaction. Typically, such changes or additions will be handwritten but they may also be typed or stamped.  In accord with the general rule that all parts of a contract are to be given effect, the courts must seek to reconcile inconsistencies between the changed or added terms and the printed matter.  Where, however, the printed contract provisions irreconcilably conflict with the provisions added by the parties, the added provisions will control."  Id.

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 24 of 33

to add Phillips Petroleum as an additional insured on its liability insurance policy. Id. St. Paul,

Zachry's insurer, issued to Zachry virtually the exact same Additional Protected Person Endorsement

that is at issue in this case. But, rather than modify the limitation language of the main text of the

Endorsement, St. Paul instead simply typed-in the following language (quoted in bold) on the

Endorsement it gave to Zachry – language that did not address or modify the limitations on coverage:

> This Endorsement changes your Contractors General Liability Protection.
>
> How Coverage is Changed
>
> There are two changes which are explained below.
>
> 1. The following is added to the Who Is Protected Under this Agreement section. This change adds certain protected persons and limits their protection.
>
> Additional Protected Person. The person or organization shown below is an additional protected person as required by contract with you. But only for . . . .
>
> ADDITIONAL PROTECTED PERSON(S):
> **Any person or organization required to be made an additional protected person in a written contract executed prior to a loss**.

Id. at 41-42 (emphasis added). Phillips reflects that when St. Paul intends to use Additional

Protected Person Endorsement GO322 to accomplish nothing more than identifying the "additional

protected person", it knows how to do so without modifying the limitations on coverage that apply

to that additional protected person. Id. In fact, the history of additional protected persons

endorsements that St. Paul issued to Wilder, utilizing Endorsement Form GO322, reflects two

things: (1) that St. Paul has from time-to-time used the typed-in language of the Form to change or

modify the printed text; and (2) that when St. Paul intends to use the Form to accomplish nothing

more than identifying the "additional protected person", it knows how to do so without modifying

**BRENA, BELL & CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 25 of 33

the limitations on coverage that apply to that additional protected person. [Exh. 9, Cardiel Dep. pp. 156-159 and Cardiel Dep. Exhs. 20, 21, 22, 23].

The specific typed-in language of the Endorsement in this case not only identifies the additional protected person but also modifies the limitations on coverage printed in the main text of the Endorsement. The typed-in language on the Endorsement in this case extends the coverage provided by the Endorsement to Tesoro Alaska in all contexts in which Wilder contractually agreed to add Tesoro Alaska to its insurance coverage, except in one, and only one context – namely, the context of Wilder's "maintenance, operation, or use of equipment leased from that person or organization [Tesoro]." [Exh. 2] Reading the typed-in language as St. Paul does, so as to **not** eliminate the limitations that are printed in the main text of the Endorsement, potentially renders the Endorsement a meaningless document as between Wilder and Tesoro Alaska. Unless Doyle's is recognized as working for Tesoro Alaska as Wilder's representative at the time that Larry Rogers is injured, the limitations printed in the main text of the Endorsement cannot remain and control. In this event, the printed limitations cannot control because if they do then the Endorsement accomplishes nothing and provides Tesoro Alaska only meaningless insurance coverage in non-existent situations. It should be presumed that the Endorsement was intended to provide meaningful insurance coverage to Tesoro Alaska in the context of its Asphalt Sales Contract and commercial buyer/seller relationship with Wilder, and this is accomplished by reading the typed-in language as controlling and stating the only additional insured coverage limitation that applies to Tesoro Alaska. This is precisely what the Certificate indicates St. Paul, Wilder and Tesoro intended. [Exh. 7]

**BRENA, BELL &**
**CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 26 of 33

>    2.    **The Reasonable Expectations of Wilder and Tesoro Alaska to the
>           Effect That Tesoro Alaska Was an Additional Insured Under
>           Wilder's Policy for Claims Like the Rogers Claim, Control
>           Interpretation of the Endorsement**

As explained above, "[t]he objectively reasonable expectations of applicants and intended

beneficiaries regarding the terms of insurance contracts will be honored even though painstaking

study of the policy provisions would have negated those expectations." Allstate, 996 P.2d at 1222

(quoting Bering Strait, 873 P.2d at 1295 (quoting Robert Keeton, Basic Text on Insurance Law §

6.3(a), at 351 (1971))).  In order to determine the reasonable expectations of the parties, Alaska law

looks "to the language of the disputed policy provisions, the language of other provisions of the

insurance policy, relevant extrinsic evidence, and case law interpreting similar provisions." Allstate,

996 P.2d at 1223 (citing Stordahl v. Government Employees Ins. Co., 564 P.2d 63, 66 (Alaska

1977)).

Here, the reasonable expectations of both the applicant, Wilder, and the intended beneficiary

of the Endorsement, Tesoro Alaska, were that, (1) the Endorsement fulfilled Wilder's contractual

obligation to Tesoro Alaska to provide primary liability insurance coverage for Tesoro Alaska with

respect to claims that might arise out of the receipt and transportation of purchased asphalt; (2) the

Endorsement added Tesoro Alaska as an additional insured to Wilder's liability policy for purposes

of providing coverage in real situations that might actually arise in the context of Wilder's

buyer/seller relationship with Tesoro Alaska (specifically buying and selling asphalt); and (3) the

Endorsement coincided with Wilder's indemnity obligation to Tesoro Alaska, and thus provided

assurance to Tesoro Alaska that Wilder would have the financial ability to satisfy its indemnity

obligation.  In fact, this was the reasonable expectation of PS&F, the broker that issued the

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 27 of 33

Certificates of Insurance to Tesoro Alaska on behalf of St. Paul. [Exh. 9, Cardiel Dep. pp. 22-41, 51, 76-77]. As an insurance broker, PS&F acted as an agent of the insurer, St. Paul, when it issued the Certificates of Insurance to Tesoro Alaska. See, e.g., Armbrust International, Ltd. v. Travelers Cas. and Sur. Co. of Am. and St. Paul Fire and Marine Ins. Co., 2006 WL 1207659, * 6 (D.R.I. May 1, 2006); General Accident Ins. Co. of Am. v. American Nat. Fireproofing, Inc., 716 A.2d 751, 756-57 (R.I. 1998); Teleco Oilfield Services, Inc. v. Skandia Ins. Co., Ltd., 656 F. Supp. 753, 756-57 (D. Conn. 1987); Etheridge v. Atlantic Mut. Ins. Co., 480 A.2d 1341, 1346 (R.I. 1984); 3 Couch on Insurance 2d § 25:94, at 447 and § 25:95-96, at 454-56 (rev. ed. 1984).

St. Paul's present position regarding the Endorsement is inconsistent with the reasonable expectations of Wilder, Tesoro Alaska, and PS&F, the broker that acted for St. Paul in issuing the Certificates. St. Paul's position also potentially renders the Endorsement a meaningless document that provides coverage to Tesoro Alaska only in non-existent situations that have no relevance to the reality of the Asphalt Sales Contract and the commercial buyer/seller relationship between Wilder and Tesoro Alaska. St. Paul's position would potentially result in Wilder having provided no additional insured coverage to Tesoro Alaska so as to coincide with Wilder's indemnity obligation to Tesoro Alaska. And, worse yet, if accepted, St. Paul's position would potentially place Wilder in breach of its contractual obligation to Tesoro Alaska because, if St. Paul's argument is accepted, Wilder would not have made Tesoro Alaska an additional insured under its Policy regarding claims that arise out of the purchase, sale, receipt, and transport of asphalt. St. Paul's position regarding the interpretation of the Endorsement must be rejected, if for no other reason, because it potentially

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 28 of 33

eviscerates the reasonable expectations of the applicant, the insured, and the broker (Wilder, Tesoro Alaska and PS&F).

The expectations of Wilder, Tesoro Alaska and PS&F regarding the Endorsement are objectively obvious and objectively reasonable. Wilder and PS&F forwarded the Certificates, that specifically indicate that Wilder obtained additional insured coverage with respect to the "Tesoro Asphalt Sales Contract", to Tesoro Alaska together with the Endorsement. It was objectively reasonable for Wilder and Tesoro Alaska to expect St. Paul through the broker PS&F to provide an Endorsement that accomplished fulfilling Wilder's contractual obligations to Tesoro Alaska. It was objectively reasonable for Wilder, Tesoro Alaska and PS&F to read the "Your Work" language of the Endorsement and Policy as covering Doyle's work as Wilder's representative for Tesoro Alaska. It was also objectively reasonable for Wilder and Tesoro Alaska to read the typed-in language of the Endorsement as replacing the coverage limitations printed in the main text of the Endorsement. Other than to replace the coverage limitations, there would have been no other reason for the typed-in language to discuss coverage limitations.

A reasonable lay person reading the Endorsement would expect that if the typed-in language was simply intended to identify the additional protected person, then the typed-in language would have done nothing more than identify that person, in this case Tesoro Alaska. Moreover, a reasonable lay person in the position of Wilder and Tesoro Alaska would have read the Endorsement in such a way as to have it fulfill Wilder's contractual obligation to Tesoro Alaska. "Lay persons are not expected to interpret a contract as a lawyer might . . . ." Teel, 100 P.3d at 4. And, in any event, even a lawyer would interpret an insurance Endorsement as having some effect so as to

BRENA, BELL &
CLARKSON, P.C.
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

provide meaningful insurance coverage in the actual real-life context of the insured's business dealings.

3.    **Relevant Extrinsic Evidence Confirms that the Endorsement Provides Additional Insured Coverage to Tesoro Alaska Regarding the Rogers Claim**

The Contract between Wilder and Tesoro Alaska constitutes significant extrinsic evidence that supports an interpretation of the Endorsement so as to provide additional insured coverage to Tesoro Alaska regarding the Rogers claim.  As the California Court of Appeals held in St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co., 111 Cal. App. 4th 1234, 1245, 4 Cal. Rptr.3d 416, 426 (Ct. App. 4th Dist. 2003):

> When additional insured endorsements, by their own terms, depend on the existence of a written contract between the named insured and the additional insured, the contract is a significant circumstance in determining the objectively reasonable expectations of the additional insured.  This is true whether or not the insurer ever actually read the contract.

(citing St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co., 101 Cal. App. 4th 1038, 1058-59, 124 Cal. Rptr.2d 818, 833 (Ct. App. 2nd Dist. 2002).  Here, just as in St. Paul Mercury, the Endorsement provides Additional Protected Person coverage to Wilder with respect to Tesoro Alaska as "an organization you [Wilder] are required *in a written contract* to show as an additional protected person."  111 Cal. App. 4th at 1245, 4 Cal. Rprt.3d at 426 (emphasis in original).[10]  Thus, just as in St. Paul Mercury, the Contract "is instrumental in assessing" Wilder's

_____

[10]    The Endorsement in this case states specifically that it applies to "Any person or organization that you agree in a written contract or agreement to add as an additional protected person." [Exh. 2]

and Tesoro Alaska's reasonable expectations because "St. Paul was obviously aware . . . [Wilder] was adding . . . [Tesoro Alaska] to its policy because it was contractually obligated to do so." <u>Id.</u>

In both <u>St. Paul Mercury</u> and <u>St. Paul Fire</u> the California Court of Appeals interpreted an Additional Protected Person Endorsement so as to coincide with the existing contractual indemnity obligation of the insured to the additional insured. <u>See</u> <u>St. Paul Mercury</u>, 111 Cal. App. 4th at 1246, 4 Cal. Rprt.3d at 427; <u>St. Paul Fire</u>, 101 Cal. App. 4th at 1059, 124 Cal. Rptr.2d at 834. This is exactly the approach that the Alaska Supreme Court took in <u>State, Dept. of Trans. v. State Farm Fire & Cas. Co.</u>, 939 P.2d 788, 793 (Alaska 1997). In <u>State Farm</u> the Alaska Court interpreted the additional insured coverage provision of a liability insurance policy so as to be consistent with the underlying contractual lease provision that had required the acquisition of the additional insured coverage. 939 P.2d at 793 ("a lease clause requiring the lessee to buy insurance protecting the lessor cannot reasonably be read to require the lessor to provide insurance coverage for claims which do not arise out of or are not incidental to such uses.")

Here, as in <u>State Farm</u>, the Additional Protected Person Endorsement *cannot* reasonably be read as St. Paul proposes so as to provide coverage only for matters that do not arise out of and that are not incidental to the Asphalt Sales Contract that required Wilder to obtain the Endorsement. The only reasonable interpretation of the Endorsement is the interpretation that construes either the printed text or the typed-in language so as to identify Tesoro Alaska as an additional insured. No other interpretation allows the Endorsement to have the intended effect of providing Tesoro Alaska additional insured status as to claims, like the Rogers claim, that arise out of Wilder's purchase, receipt and transport of asphalt from Tesoro Alaska.

**BRENA, BELL & CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
<u>Tesoro v. St. Paul Fire and Marine Insurance Company</u>, 3:06-CV-00020-TMB
Page 31 of 33

Further, if the Endorsement is construed so as to coincide with Wilder's indemnity obligation to Tesoro Alaska, that Endorsement must be construed so as to provide additional insured coverage for Tesoro for "all damages, . . . claims, . . . demands, . . . liabilities and causes of action of every kind and character, including without limitation therefor . . . injury to or death of any person . . . in any way incident to, in connection with, or arising directly or indirectly out of Buyer's or its . . . contractor's . . . actions or omissions in or during . . . the receipt, . . . transportation . . . of the Product [asphalt] . . . ." [Exh. 1, p. 2, ¶ 9(c)] The Rogers claim relates directly to Wilder's receipt and transportation of purchased asphalt and thus falls within the intended scope of the additional insured coverage provided to Tesoro Alaska.

### 4.    Any Ambiguity in the Endorsement Must be Resolved in Favor of the Interpretation that Most Favors Tesoro

When a clause in an insurance policy is ambiguous, Alaska law construes the ambiguity against the insurer and recognizes the interpretation that most favors the insured and coverage. Great Divide, 79 P.3d at 606; West, 8 P.3d at 1138; Allstate, 996 P.2d at 1222 and n. 38; Fejes, 984 P.2d at 522; Makarka, 14 P.3d at 966. To the extent that the printed text and/or the typed-in language of the Endorsement creates any ambiguity, the ambiguity must be resolved against St. Paul and in favor of Tesoro and in favor of coverage.

### 5.    Construing the Limitations of the Endorsement Narrowly Requires Finding Additional Insured Coverage for Tesoro

Alaska law "construe[s] grants of coverage broadly and interpret[s] exclusions narrowly." Teel, 100 P.3d at 4. If the coverage in the Policy and Endorsement are construed broadly and the

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 32 of 33

exclusions of the Endorsement are construed narrowly, Tesoro Alaska should be found to be an

additional insured with respect to the Rogers claim.

## CONCLUSION

For all of the above reasons, Tesoro Alaska should be granted partial summary judgment

against St. Paul declaring Tesoro Alaska's status as an additional insured on the Wilder Contractor's

Commercial General Liability Protection Insurance Policy under Endorsement GO322, and declaring

Tesoro Alaska's right to additional protected person insurance coverage, both defense and indemnity,

from St. Paul with respect to the Rogers claim.  The Rogers claim fits directly within the scope of

both Wilder's indemnity obligation and St. Paul's insuring obligation to Tesoro Alaska.

DATED this 22nd day of September, 2006.

BRENA, BELL & CLARKSON, P.C.
Attorneys for Plaintiff
Tesoro Alaska Company

By _____/s/ Kevin G. Clarkson_____
ABA No. 8511149
310 K Street, Suite 601
Anchorage, AK 99501
(907) 258-2000 - Telephone
(907) 258-2001 - Facsimile
E-mail: kclarkson@brenalaw.com

**Certificate of Service**

I hereby certify that on September 22, 2006,
a copy of the foregoing document was served
electronically upon:

(Attorney for St. Paul Fire & Marine)
Earl M. Sutherland, Esq.
601 Union Street, Suite 1500
Seattle, WA 98101-1363
E-mail: esutherland@rmlaw.com

_____/s/ Kevin G. Clarkson_____

**BRENA, BELL &
CLARKSON, P.C.**
310 K STREET
SUITE 601
ANCHORAGE, AK 99501
(907) 258-2000

TESORO ALASKA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
[Count 1 – Additional Insured Coverage]
Tesoro v. St. Paul Fire and Marine Insurance Company, 3:06-CV-00020-TMB
Page 33 of 33